IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

```
ADAIRE F. BROWN,                        *
                                        *
         Plaintiff,                     *
                                        *
vs.                                     *   No. 4:12CV00356 SWW
                                        *
HOT SPRINGS NATIONAL PARK               *
HOSPITAL HOLDINGS, LLC d/b/a            *
NATIONAL PARK MEDICAL CENTER,           *
                                        *
         Defendant.                     *
```

**Memorandum Opinion and Order**

Pending before the Court is defendant's motion for summary judgment to which plaintiff responded. Defendant filed a reply to the response. For the reasons stated below, the motion is granted.

**Background[1]**

Defendant National Park Medical Center ("NPMC") is a 166-bed acute care facility that provides a range of medical services to the city of Hot Springs, Arkansas, and the surrounding community. It owns and operates seven outpatient medical clinics/physician offices, which employ approximately forty non-physician employees and fifteen physicians. In August of 2011, NPMC began a search to fill the Director of Physician Clinic Operations ("DPCO") position. The DPCO is responsible for managing the operational aspects of the NPMC's seven clinics, including staffing, accounts receivable, billing and collections, physician recruitment,

---

[1]Based on defendant's statement of undisputed facts and plaintiff's response to those facts. Docket entries 21 & 27.

non-physician employee evaluations, managing the office, month and year end financial close-outs, and periodic reporting to hospital executives.

Plaintiff Adaire F. Brown ("Brown") applied for the DPCO position in early September 2011 through a recruiting firm. Ms. Brenda Zuber, an account executive with the recruiting firm, provided Brown's resume to Richard Grisso, NPMC's Director of Physician Programs, and put Brown in contact with Grisso. Mr. Grisso interviewed Brown by telephone on September 14, 2011, and NPMC scheduled Brown for an in-person interview on September 26, 2011. Mr. Grisso; Jerry Mabry, CEO; Brian Bell, COO; Debbie Campbell, Practice Manager; and Drs. Jeffrey Tauth and James Humphreys interviewed Brown on September 26. On September 27, 2011, NPMC extended Brown a job offer. After extending the offer, NPMC learned for the first time that Brown would not be available to work between sundown on Friday through sundown on Saturday because of her religious beliefs as a Seventh Day Adventist. Over the next few days, Brown, Zuber, and Grisso communicated about Brown's unavailability for Saturday work, and on or about September 30, 2011, NPMC withdrew the offer to Brown.

Plaintiff Brown filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 24, 2011, alleging NPMC discriminated against her on the basis of religion. The EEOC issued a right-to-sue letter on March 16, 2012, and Brown filed the lawsuit before the Court on June 12, 2012. Plaintiff Brown complains that NPMC's decision to withdraw its offer amounted to an unlawful refusal to accommodate her religious beliefs. Defendant NPMC argues it is entitled to summary judgment because Brown cannot establish a *prima facie* case of discrimination or pretext, and because her requested accommodation would impose an undue burden on NPMC.

**Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment "is a useful pretrial tool to determine whether any

case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester* 643 F.3d 1031, 1043 (8th Cir. 2011).

## Discussion

Title VII provides that it is an unlawful employment practice for an employer to fail or refuse to hire any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff Brown may avoid summary judgment by presenting direct evidence of discrimination or by relying on indirect proof of discrimination and "creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Torgerson,* 643 F.3d at 1044. Plaintiff Brown must first establish a *prima facie* case of discrimination by showing that she is a member of a protected class, she was qualified for an open position, that she was denied that position, and that the employer filled the position with a person not in the same protected class. *Id.* at 1046.

If Brown makes a *prima facie* showing, the burden shifts to NPMC to articulate a legitimate, nondiscriminatory reason for not hiring her. *Id.* Once NPMC proffers such a reason, the burden then shifts back to Brown to show that "the legitimate reasons offered by defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (quotations and citation omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quotations and citation omitted).

Plaintiff Brown argues that the NPMC's requirement that its DPCO be available 24/7 is direct evidence of discrimination based on religion because the requirement blocks all persons who observe the Sabbath from being qualified for the position. Thus, Brown argues, she has established a genuine issue of material fact as to whether the NPMC's decision was based on illegal discrimination. "Direct evidence is evidence that establishes a 'specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision.' Direct evidence includes 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor.'" *Shaffer v. Potter*, 499 F.3d 900, 904 (8th Cir. 2007)(internal citations and quotations omitted). The Court finds Brown presents no evidence of any statement or act that reflects an alleged discriminatory attitude by NPMC.

Defendant NPMC asserts plaintiff cannot establish a *prima facie* case because she cannot show that she was qualified for the position or that it hired someone outside her protected class for the position. The undisputed facts show that NPMC considered 24/7 availability to be an essential function of the DPCO position. Plaintiff Brown admits that Grisso mentioned at the time of her interview that the job would entail "[s]ome long hours initially, and some Saturday work."[2] She also admits that after her interview she discussed with Grisso her deeply held religious beliefs and observance of the Sabbath and he told her he would check to see if her

---

[2] Brown Aff. at ¶8. Docket entry 26.

5

unavailability might be a "deal breaker."[3] Plaintiff Brown does not dispute that individuals who have held the position in the past have been required to work on Friday evenings as well as Saturdays.[4] Instead, she explains how she believes the duties of the position could be accomplished without the director having to work on Friday evenings and Saturdays.[5] She further complains that the job description does not state the 24/7 availability requirement, NPMC never informed her in writing or verbally that it was a requirement, and that the first time she learned NPMC considered it a requirement was from NPMC's response to her EEOC complaint. She asserts that if defendant wanted to hire her, it could have accommodated her unavailability in a number of ways. Plaintiff Brown admits that the DPCO position has not been filled.

The Court finds Brown fails to establish a *prima facie* case of discrimination because there is no evidence that she was qualified for the position or that the position was filled with someone not in a protected class. In addition, the Court finds NPMC set forth a legitimate, non-discriminatory reason for its decision not to hire Brown.

Following Brown's interview, Grisso contacted Zuber to let her and Brown know that NPMC decision-makers needed to know whether Brown would be available to work on Saturdays. While Brown contends that her unavailability is something that NPMC could have accommodated, especially considering her experience, the record reflects that NPMC considered 24/7 availability important. There is no evidence that the reason proffered for withdrawing its offer to Brown was a pretext for discrimination.

---

[3] *Id*. at ¶ 9.

[4] Pl's. Resp. to Def's. Statement of Undisputed Facts at ¶¶7-10. Docket entry 27.

[5] *Id*.

Title VII requires an employer to reasonably accommodate the religious beliefs of a prospective employee as long as the employer can do so without undue hardship on the conduct of the employer's business.  42 U.S.C. §2000e(j). "'To require [an employer] to bear more than a *de minimis* cost ... is an undue hardship.' 'The cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unavailable due to a religious conflict can amount to undue hardship.' *De minimis* cost, moreover, 'entails not only monetary concerns, but also the employer's burden in conducting its business.'" *Brown v. Polk County, Iowa*, 61 F.3d 650, 655 (8th Cir. 1995)(internal citations omitted).   In order to accommodate Brown, NPMC would have to relieve Brown of her duties every weekend between Friday at sundown through Saturday at sundown.  It is undisputed that in the past, employees performing the DPCO duties have had to perform a number of tasks between Friday evening and Saturday evening, including troubleshooting problems with the clinics' wireless computer network which clinic physicians access around the clock; responding to various physicians' concerns such as locating patients' charts; completing reports made on the last day of the month; supervising repairs and maintenance inside the clinic; and meeting with the police department and fire department in cases of emergencies.[6]  Defendant argues that in order to accommodate Brown, some weekend responsibilities would have to be assigned to other employees, which would constitute an undue hardship.  See *Harrell v. Donahue*, 638 F.3d 975, 980 (8th Cir. 2011)("if accommodating an employee's religious beliefs also causes a 'real' and 'actual' imposition on co-workers,Title VII does not require an employer to make such an accommodation.")(Citation omitted.)  The Court finds defendant has established that delaying or shifting to other employees

---

[6]Grisso Decl. at ¶¶ 6-7.  Docket entry 22.

the performance of duties that may arise Friday evening through Saturday evening, such as those noted by defendant, would have a detrimental effect on operations, including ability to provide patient care. Therefore, the Court finds there is no genuine issue of material fact in dispute as to whether NPMC would have actually suffered an undue burden in accommodating Brown's observance of the Sabbath.

## Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [docket entry 19] is granted. Judgment will be entered accordingly.

DATED this 13th day of May, 2013.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE